Welcome to Day 2 of our Oral Argument Calendar for this week. We have some special guests today. First, we have the Benjamin Franklin High School, which is a New Orleans charter school, and I believe we have the AP Government class. Is that correct? Good. Welcome. I hope this is an educational experience. We also are pleased to have our annual conference of the Fifth Circuit Federal Bar Association and a number of lawyers associated with that program today, which is an excellent educational program as well. Thank you. And also, of course, we have members of the general public, and it's very important that we have public courts that people can come and observe at any time. We call the first case for today, 2015-51077, the State of Texas v. Charles Kleinert. May it please the Court. Under Mesa v. California, it is the raising of a federal question in an officer's removal petition that constitutes the federal law under which an action against the officer arises for Article III purposes. Because the defense in this case of accident does not raise any federal question, it is not a federal defense and thus cannot support Article III arising under jurisdiction. Alternatively, the district court in this case erred in dismissing the indictment under federal rule of Criminal Procedure 12 because the district court decided material disputed facts, did not assume the truth of the allegations in the indictment, and did not view the evidence in the light most favorable to the state. To my first point, the defense asserted in this case does not give rise to Article III arising under jurisdiction. In Mesa v. California, the Supreme Court considered the question of whether the federal officer removal statute could provide an independent basis for substantive Article III jurisdiction. And in that case, the Court concluded that no, in order to raise a federal question, a case must allege it in its defense. So there's no substantive Article III jurisdiction unless you raise a federal defense by your pleadings. In that case, for instance, Catherine Mesa was charged with manslaughter after her mail truck killed a cyclist. And in that case, the Court found that she had not and could not present an immunity defense. By contrast, the Court in Mesa also considered the case Tennessee v. Davis. And Tennessee v. Davis was a murder prosecution against a revenue collector, a federal revenue collector. In that case, James Davis was seizing an illegal distillery, and he was fired upon. He argued in his defense that he had fired back, killing one of his assailants in the process. And the validity of his self-defense claim depended on a question of federal law. Was it his duty to seize the still? If he'd merely been a thief attempting to steal property, then returning their fire would not have been an act of self-defense. Proof that he was not a thief depended on the federal revenue laws and thus provided the necessary predicate for removal. Could you just step back a minute and tell me what's your allegation of error as to the 1442 statute? Is it this but-for theory that you interpret 1442 to require that a defendant negate any authority other than federal authority? Or is your argument the one I heard you elaborating just a minute ago, which is simply that this gentleman never had federal authority to pursue and then struggle and shoot? The argument that I'm attempting to articulate now has more of an Article III basis, which is that by his pleadings, he must aver a federal defense. He must raise a federal question. Aver a colorable. He was a colorable federal defense, correct? Correct. And from the cases, it's clear that in order to do that, it's not enough to simply say, I was in the scope of my employment and I did what was reasonably necessary and proper. So it's required under the case law that he actually raise facts that support a federal question. So the fact that he's a fed, whether he is in pursuing the bank robber, is not relevant to the Article III standing, or it may be some factual thing, but that alone does not give Article III. Is that what your position is? Precisely. That's not sufficient. It may be necessary that he be acting as a federal officer in chasing the person, but it's not sufficient. So, for example, if you look at Colorado v. Symes, in that case, you had a prohibition agent that was attempting an arrest for violation of the prohibition laws, and the Supreme Court said, well, it's not enough that you are in the scope of your employment. You must allege facts in your defense that raise some federal question, that you had to do this. This was justified by your federal duty. In this case, the defendant is charged with the offense of manslaughter. Well, thinking back to Tennessee v. Davis, with a brief reminder that we've had these removal statutes for people acting in the federal process. Post-Civil War, they were vital to the Reconstruction period, and Tennessee v. Davis was the utilization of this statute. But in Tennessee v. Davis, you characterize this as raising a heavy, that the federal issue arises there because he had to demonstrate that he was, he had authority to do what he was doing, essentially. Because what happens there, when he comes upon the steel he's fired upon, then he's indicted by the state. So what you have there is the state of Tennessee is charging a man for crime for carrying out his federal duties, and that's the heart of the removal statute. And here you have a man who was, we can assume from the person I questioned, that he was a federal agent. I know there may be some question about that. But he was carrying out those duties. And if he wasn't carrying out those duties, he had no authority to effect that arrest. So it comes with a federal question embedded in it. What do you say to that? I don't think Mesa, I don't read Mesa as qualifying that because it's inherent in the same sense that the defense is inherent in the facts, operative facts that support the removal. It's true in both cases, Mesa, and it's true in, I mean, Mesa makes that distinction. But I don't, Tennessee v. Davis would seem to control this case. The difference, Your Honor, in response, I would say the difference between this case and Tennessee v. Davis is that in Tennessee v. Davis, there was a claim of self-defense. And in this case, there is no such claim. He is claiming accident. And the cases make it clear that accident is not a federal defense. So, for example, if you look at North Carolina v. Ivory, in that case, there was a U.S. Marine that was driving in a military convoy, and that was clearly part of his job as a U.S. Marine. And in reaching the base. But the accident quote occurs, as I understand the fact situation. The officer had drawn his weapon, and the individual had had his weapon in his right hand, and they were in a struggle, and he's struggling for the gun, and he's got a hand out. Any time an officer's got a hand out of his holster, the gun is now a weapon that can be used against him. And he strikes. He's trying to strike the man with a gun, and he maintains that it went off in that court. So why isn't that bound up? Why isn't that? He's carrying out his duties as a federal officer. Why isn't that enough? Your Honor, if he had made a claim of self-defense in this case, that might have been enough. But if you look at the record, he specifically testified, the defendant specifically testified, this was not a self-defense situation. So there isn't any claim factually in this case that I had to defend myself. In Mesa v. California, they quote language from there. Why didn't he have the gun out? From the testimony in the district court, the reason he removed his gun to begin with is that he was telling Larry Jackson to stop, and he was commanding him to obey to his authority. And he testified additionally that he would have re-haltered his gun if he had been able, but was not able to do so because of the long shirt that he was wearing. Were you maintaining when an officer draws his weapon to apprehend a vehicle, a person, that he's not necessarily acting in self-defense? Your Honor, the issue of self-defense would have to be raised by the facts in any particular case. And in this particular case, there is no claim of self-defense. Instead, what the officer avers and alleges is that he killed Larry Jackson by accident, that he did not intend to do so. And he further factually disputes some of the evidence or allegations in the indictment. With your focus on colorable federal defense, it seems to me, remembering the hearing in front of the district court, what you're really doing is arguing the second issue at the same time, because in part how we decide the federal officer immunity would control this. You see my point? Our position is that you would have to address the issue of removal first. Okay. I understand that, and that's because it's jurisdictional. Okay. Let me step back legally. What's your best circuit authority that this district court lacked removal jurisdiction? What's the closest circuit decision applying 1442 to find that there would be no removal jurisdiction? The closest would be North Carolina v. Ivory. What circuit is that? That's the Fourth Circuit. And there's a helpful district court opinion out of New York called Devecchio that talks about federal defense. With the focus you're giving now, you're focusing on just the acts, the three acts that were charged. In other words, the moment of arrest, struggle, and discharge, because everyone admits, I think it's undisputed, that he was at the bank as a task force officer under supervision of the FBI, correct? Originally he got there. When he was there, he was there for a purpose for the FBI, picking up video footage, and at that time we would agree he was acting as a ---- And then in your brief you agreed that he had reasonable suspicion to detain and question Jackson pursuant to that authority. I think you said that in your brief. Our position is that he had reasonable suspicion. When he was addressing the grand jury, he articulated himself in terms of a state law authority, and he said that he had reasonable suspicion to detain for a crime. Well, he talked about fraud in a general sense. It could have been a mixed motive, for instance. So then if he's got reasonable suspicion, then the next event that happens is flight. Correct. What case can you cite that reasonable suspicion plus flight from officer wouldn't be probable cause? In our brief we cite a case called Novato, and it talks about flight not being sufficient to raise. But was that flight after questioning with conceded reasonable suspicion? We think he had reasonable suspicion, yes, to investigate, and it really never developed to probable cause to arrest for a federal offense. And then when Jackson ran, he had probable cause to arrest for a state offense of evading detention. So our position is essentially he acted instinctually as a state officer. He witnessed a crime against the state laws. Under the Code of Criminal Procedure of Texas, he had an obligation to arrest for an offense committed in his presence for the state laws. You may want to get to your second argument. Let me take you back to the client's actual testimony. And I quote, he's explaining the effort that was taken for him to holster his weapon before physically contacting Jackson. He had his weapon out. And he said, I would have to move my shirt, look down at my holster to re-upholster it, and in an active pursuit, when I've got either hands on or I've got a suspect in sight in close proximity, I'm not going to take my eyes off that person. So regardless of the thickness of the shirt, I'm not going to take my eyes off that suspect to put my eyes on my holster. So that, to me, seems to say that obviously a very large concern about the gun and the placement, et cetera. In Tennessee v. Davis, the man returned fire. But suppose that he said, I wasn't trying to kill anybody, but I returned fire to stop them, but a bullet ricocheted and hit somebody. It would, in circumstance of what I'm getting at, as I have a hard time separating out this as a claim that there's no federal defense here, when it is a federal authority that he's enforcing, and in his pursuit of that authority that he is protecting himself, if you will, because he can't reupholster that gun, that this occurs. So I'm trying to put a finer bead on this as to what actually happened factually. Well, some helpful language to the issue that the Court raises is quoted in Mesa, and it comes from Maryland v. Soper where he says, basically, the act of defending yourself is part of your federal authority. In order for you to actually succeed in doing your federal purpose, you must be able to defend yourself in the process. Why isn't that exactly what he's doing? He said, I can't reupholster my gun here because of the threat of the suspect. Why isn't that enough? I guess the distinction that I would draw here is that the State's indictment alleges that he intentionally struck Larry Jackson with his gun while holding that firearm in his hand and that he held the gun and used the gun to control Larry Jackson. It was better than shooting him, wasn't it? In other words, if you had shot him, it would be an unreasonable force of a police officer. Instead, he didn't do that. He tried to subdue him, and he succeeded in doing that. He didn't fire the weapon. So I guess I don't understand why he's not acting in the protection of his own self and simultaneously trying to carry out his duties as an arrest. I think that you're correct that there's a potential argument that he could have made there but that that argument wasn't actually made here. So, for instance, if you look at Colorado v. Symes, where we had a very similar situation, an attempted lawful arrest, and the officer explains himself by saying, well, I was trying to arrest him, and in the process of that, I used physical violence against him. And the Supreme Court said, that's not enough. You need to avert actual facts that explain why that was justified. I understand that. That's why I went to the facts. That's exactly what he said. Can we look at those facts, or do we have to look at what was pled and argued? I see that my time has expired. I'm going to give each side two more minutes, please, because we haven't even heard your other argument yet. From North Carolina v. Ivory, relying on MESA, you must avert facts, or they also use the language, put facts before the court that raise a federal question. So the pleadings here raise the defense of accident. That's what he claims. And our position would be that the evidence put on in the district court was more or less consistent with the pleadings, which is that he never stated that he intended to kill Larry Jackson or that he had the authority to do so. He never really put on the claim, yes, I used deadly force, but I was authorized or justified in doing so. Instead, the claim in the district court was, as Larry Jackson was turning into me, I fell, and as I fell, my gun discharged. And that takes me to the second point, which I won't be able to elaborate in great detail, but that the district court decided material issues of fact without acknowledging it in this case. So the district court more or less adopted the testimony of what the defendant said had happened, that as Larry Jackson turned into me, I fell and my gun discharged. But the State brought evidence, for instance, from the medical examiner, David Dolanak, that the entry wound of the shot that killed Larry Jackson Jr. was fired within an inch of his neck. So the muzzle imprint, which is basically a physical characteristic associated with the entry wound, tells you something about the gun's position when it discharged, which was that it was within an inch of Larry Jackson. It was a three-day hearing, and I agree, when you look at it, there seemed to be quite a few disputed questions, both as to subjective belief and the objectivity, but that's accepting the Nagel test of subjective. So your argument is just that there were material disputes using that test. Our position would be that what you consider material would depend on how you decide to interpret that test, but regardless of how you consider the test. I agree, but then my one question is it looked to me like that you waived, you indicated, you assigned a joint waiver, and the district court did too, explicitly saying that both parties agreed this court would decide those facts. So having done that, even though it's an intriguing question, how facts are decided, if it were a straight 12b question, having done that, it would seem to me all that's left for us to do is decide did the district court's finding, are they clear error or not? Our position is different, is that procedurally we were on a 12b motion, that if you look at the motion to do that. You were, but you have a waiver, the limited waiver of a jury trial. In the district court's opinion on terms, it did not decide material facts. But I'm just asking you, did you or didn't you sign a waiver saying you decide, we both parties agree, you will decide the facts relevant to necessary and proper? We did sign a jury waiver, and our position is that jury waiver would have become relevant only had a renewed motion to dismiss on another basis been urged, and that in that instance, the court would have been deciding the issue as an affirmative defense and not under the Rule 12 standard where our only burden was to raise a genuine issue of material facts. Right. What did the waiver say? The waiver, it basically just said that it was a limited jury waiver as to the community question only, and it said that the parties would agree that the court could decide disputed issues of fact, but it was only to come into effect. Was it required for removal? No. For removal, no. I'm trying to get the language of it clear. I think your colleague has it right there. So it's your position that it wasn't a waiver for all purposes for the entire case, and so you had to follow orderly process in the case. I don't understand why the court assumed that it could go in to decide fact issues at that point. Let me read it. It might help. The State of Texas and Defendant Charles Kleinert agreed to have the court resolve any and all factual issues related to defendant's asserted defense of immunity from state prosecution under the Supremacy Clause and accordingly waive the right to have any and all such factual issues to be decided by a jury. Now, as you've stated and defined, I don't understand what fact issue would not relate to the removal of this case. I see that my time is up. Please, we each have further questions. Charles, please answer here his question and then answer my question. For the purposes, I think we're operating under a different standard for removal. So for the removal proceeding, the burden was on the defendant to raise a federal question through his defense. So he didn't have to win his federal defense. He simply had to allege or aver, bring facts to the court that raised some federal question that gave Article III jurisdiction to the court. So our position is that in claiming he killed Larry Jackson by accident, he did not raise such a federal question, that that was not one that sufficiently averred or alleged facts that would have given the court jurisdiction. You say that. Your earlier argument in our earlier discussion was that the whole removal question really turns on these issues, and that's exactly what you waived a jury on. I guess you can't have it both ways. Did you want to answer that? Because I have a question, too. If you want to, you can gather your thoughts and then come back and get handed on to the pro bono. That will help you a little bit. I apologize for taking too much of your time, but I'll give you a chance to look at that again. Thank you, Your Honor. Did you raise, I'm still puzzled by why the court thought at the 12B stage that it would go into the facts and make factual determinations at that stage. Did you raise with the district court that it was improper to make those determinations at that stage of the process? Yes, Your Honor, we did. And perhaps looking at sort of a timeline of how this all came about. I don't have a record cite for that. That's an important answer. You objected to the way the district court result decided this? If you look at the State's opposition or pleading in opposition to the motion to dismiss, we lay out very explicitly what we think the standard is for Rule 12. But you didn't object in that at record page 329. You say the parties to this suit executed written waivers of any right to have a jury resolve factual issues bearing on defense. That's in your motion to opposition to motion to dismiss. You said exactly what you said in the waiver. Respectfully, in our opposition, we talk about the only guidance. So the whole origin of this was that the defense brought their motion to dismiss, and they said the district court can decide issues of fact related to this. And so in response, we brought out this discussion that came up in Horiyuchi v. Idaho. So in that case, the Ninth Circuit was looking at this question, and they, in the majority opinion, Judge Kaczynski talks about, well, there's an absence of authority about who should decide this and when. Should it be decided by the jury at trial, or should this be decided by the judge before trial? And the dissenters didn't agree with Judge Kaczynski about what should happen. They said, this is a jury question, ultimately. This needs to be decided by a jury. But Judge Kaczynski felt that it needed to be decided pretrial by the judge. And so if you look at this Arizona v. Files, that's the case. It's a district court opinion, but it's a case that wrangled with the same issue that we were wrangling with, which is, if we do raise material disputes of fact, who should decide that and when? And so in our opposition to the motion to dismiss, we went through a procedural discussion of this, and we said, if the State raises a genuine issue of fact, the motion under Rule 12 should be denied. But we were in agreement with the idea that the district court could then decide the different posture, which would be with the burden on the defense and proving it as an affirmative defense. But when did you object to the district court and say, no, we do not agree that you can resolve these disputed facts? You said you did, and you may have talked about this in passing in your motion, but when did you object once you realized that was happening? Well, we only realized that the district court had decided material disputed facts when it did not file a motion to reconsider. And it's a case of, you know, you can't decide facts. You judge, Your Honor, you made a mistake. This was, we never agreed to this, and it's against the Arizona v. Fine process. Just a record cite, counsel. Yes. Well, the district court said it did not decide materials. What's your record cite in answer to that question? Did you file a motion to reconsider? Did you ever say, I object to how you're handling the 12b matter? We did not file a motion to reconsider. Okay. I think that you save time for rebuttal, and we have your argument on opening. May it please the Court. I'm Randy Leavitt, representing the athlete Charles Kleiner, who at the time of this event was a federal task force officer. I'm just going to interrupt because my thoughts on her point, which is a good one, and Judge Kuczynski, that's a vacated Ninth Circuit decision, but it does seem to me the law, even in what's the case, Tinella, is unclear. Usually a 12b motion, the facts are considered in the light most favorable to the prosecution. So what's your best case telling us when, in the context of federal officer immunity, a district court or not the district court, who, when, and with what level of convincing force decides the question of necessary and proper? What's the best case that tells us when that issue can be decided, who can decide it, and with what level of convincing force? Judge, I think the Horiuchi case has the best analysis in it. But that, the Ruby, that's the vacated. That was vacated. It is vacated, and it's not present, but it sets out the analysis as to why. That's fair. In these type cases. Do you think the Second Circuit followed that in Tinella or not? There's a statement in there that leads you to wonder when they say that there's a material dispute, a genuine issue of material dispute. Okay. Not entitled to immunity. Do we have to reach that in this case, or does the waiver relate to that? That's the point, is I don't think you have to because that's the very reason, Judge Higginson, that we got the waiver. The state, in their opposition, as you've already pointed out, to the motion to dismiss, set out the case law for the judge, set out the standard, and said they agreed with the defense that in a situation like this that the district court ought to resolve any disputed facts. That's in their brief. You've already cited it in the opposition to the brief. So then are we reviewing the findings of fact for clear air only? Is that your position? It is odd that the district court would say I'm not going to look at the MOU and there are no disputed issues of fact when there are some. I mean, it's a three-day hearing. Good lawyers are going to bring up issues of fact. In other words, if we're asking what did he subjectively believe he could do with his gun and what's an objective aspect of that, if the forensic evidence suggests in any way that he wasn't falling backwards when Jackson was shot, but the guy was surrendered and was prone, it would not be necessary and proper to then shoot him. That's correct. Had he surrendered. So aren't there some disputed issues of fact in that three-day hearing? I think that the state, and they put it, I think, bluntly in their brief, is that they say things like the evidence raised in inference. They state at page 26 in their brief twice he may have been attempting to hit the suspect in a battle area of the suspect's bed with a hammer fist strike with a gun in his hand. They say that he may have attempted to grab and control him with a gun in his hand. If you didn't have the waiver, would the district court still have to decide this issue because it goes to its jurisdiction? I believe so, but I think this court would have to set up some law and make a decision. Go back to your argument. Well, let me just finish that because I do think it's important. The whole reason that we had this waiver issue was because of discussions that we'd had with the court, the briefings that both sides had done. We did not want to have to deal with that issue when we brought it up to the Fifth Circuit. Either side. Both sides knew this case was coming up, regardless of how Judge Yankel decided. And so the easiest way to deal with that, following the precedent of the Arizona v. Files case, which was talked about in the pre-hearing matters, talked about with the court, we all determined let's waive the issue now. Let Judge Yankel do it at the 12B hearing. He will resolve those facts and resolve them. And I believe he did. To say he didn't resolve any disputed facts is just unclear because if you read his opinion, he sets out all the evidence. Then he has a factual finding where he goes through all of the findings that he made. So I hope I've answered that question. Let me just briefly move to the two points that I really wanted to cover, and one of them I'm probably going to spend a little less time on than I planned on, and that is the state's theory that because Officer Kleinert was also an Austin Police Department official, a state official, but assigned to the Federal Task Force, that he has dual authority and that in making an arrest, you have to look at that dual authority and say, well, was he doing this on state time or was he doing this on federal time? Was it a state arrest? Was it a federal arrest? I'm curious to hear the answer, but that hasn't been the argument presented today on 1442. As far as jurisdiction? She meant passing, but not so what is the answer? Your Honor, I think the answer is the one like you would do in any probable cause determination. You look at the objective facts and you look at the findings that the lower court made. He found that he is there at that bank because he's a task force member there. There had been a robbery there that morning. There had been other robberies earlier in the preceding months the task force was investigating. He went back there as a task force officer to pick up the videotape that had been downloaded for him to come back and pick up. At that time, Mr. Jackson shows up, then goes through, as the court, I think, is well aware of all of Mr. Jackson's conduct. He identified himself as William Majors, who is a friend of the bank president and well-known to the employees. He said he wanted to take money out of Mr. Majors' account. Officer Kleinert was there. That information was communicated to him. Some of it he actually saw Mr. Jackson attempt to enter the bank when it was closed, and he went outside to detain him to do what his job is as a federal task force. So that's reasonable suspicion that bank robbery or bank fraud has occurred. So he detains to question, and then Jackson runs. At a minimum, it's reasonable suspicion. It could possibly be at that point in time. I believe it's probable cause of bank fraud. Even without the flight? He fits the elements. But with the flight, there's no question. Once he takes off running, he's committed a federal offense in this officer's view. He's carrying out his task force duties. But their argument is it's concurrent jurisdiction. Every time you've got a task force with local officers, they're going to end up having probable cause for the federal offense that they're investigating. And then in the situation of flight during questioning, of course they're going to have probable cause for a state evasion also. So their argument is that the defendant would have to negate the concurrent jurisdiction. I think that's their argument. And I think that puts a very difficult posture for the courts to try to review. I don't think that's the proper approach. If you've got dual jurisdiction, does state trump federal protection? No. The analysis the court, I think, used here is it reviewed the facts objectively. He looked at the statute, the bank robbery statute. He looked at the bank fraud statute. He looked at the purposes why Kleinert was there. And he found objectively that the evidence supported that he had federal authority under 1442 to carry out that arrest. And that's what he was doing, and that's all he needed to do. The third option is the one that they're asking you to employ in each and every case, and that is go into the subjective mind of the arresting officer on each offense and figure out what was he thinking. Why was he making this arrest and apply that subjective view? We haven't done that in probable cause determinations in other areas. That's the Wren case cited at page 40. It's viewed from an objective standpoint. Was there a federal violation of the law committed in Officer Kleinert's presence in which he had the authority and the duty to carry out the arrest? And that essentially is our argument on that point. Yes, ma'am. Can we talk about the reasonableness of the actions taken by the officer, the striking? The things that are alleged in the indictment. Yes. Was that the striking a reasonable act of authority? I believe it was. I certainly do not believe that it was unreasonable under the circumstances or under the case law. And also, can you cover, I don't understand how the point-blank range at the back of the head occurred, given the facts as alleged by the officer. So can you cover both of those? I will. Well, I'd like to take that second one first, if I can, just to freshen my mind. Officer Kleinert's testimony before the district court, before the grand jury, and anybody else that would listen to him was that he described having finally caught up with Jackson when he got him coming at you under a bridge and he pulled out his weapon. As he approached him, Jackson took off again. This time he kind of had an angle. He was able to catch him, and he gets a hold of him, and they pull themselves up underneath the bridge. At the end of that bridge, you'll see a picture in our brief. I think it's on, like, page 13 or something. There is an incline to go back and escape from the hiking bike trail. We had a mock-up made and used it in the courtroom to describe exactly what happened. He had him. Jackson tries to go up that incline, and he's climbing on all fours trying to get up. Of course, Kleinert still had his gun drawn at that time because he had that long-sleeved shirt, long shirt. More importantly, he didn't know whether or not this fleeing felon was armed or not. He couldn't see what was in his hands. It turned out he had something in his hand. It was a cell phone. He didn't know what it was at the time, so he was down in a wooded, secluded area. He had every reasonable reason to still have his gun out. As he's trying to climb up, he sees an opportunity to try to get him on the ground. He's got him kind of on all fours, and that's when he employs the hammer fist strike with the hand that had the gun in it because he's got the other hand over here, as he was trained to do, with his finger on the slide, not on the trigger. He doesn't hit the head. He doesn't hit the neck. He makes a couple of strikes to the back ribcage area to no avail. That is when Jackson springs back up, turns around, turns into him and takes off running, with Kleiner holding on to him and the trigger to fall, and as he does, the gun discharges. Where? We don't know. We know the gun was in very close proximity to the neck when it discharged. Sympathetic discharge is what is known in the literature, an unintentional discharge. Their expert agreed this was an unintentional discharge, no question about it. There's three ways an unintentional discharge can occur. Startled response, officer sitting there standing, he's got a gun pointed at somebody, and another gun or a loud noise, a backfire, something goes off. If you get your finger on the trigger, it can inadvertently fire. Not our case. The other two examples given in the studies by their expert that I cross-examined on, Mr. Priest, tripping and falling or grabbing somebody with the gun in your hand. You grab here, this hand contracts. So I think it's explained by the forensic evidence in these cases. Can you cover the first part, the first one where the striking of the weapon at that point? Because I've always understood from these cases that, you know, the officer's not supposed to draw the gun unless they intend to use it. You know, that sort of, that kind of common sense police officer thing. When they draw their gun, they mean to use it. And so he's drawing it, and then he's hitting someone with it who is not, how is he a danger to him at that point? I don't think that an officer is not ever supposed to draw their gun unless they intend to use it. They need to be prepared to use it. And the FBI agent that testified in this case, the two training officers from the Austin Police Department Academy, the two experts for the state of Texas all testified drawing the gun was a proper, appropriate police tactics under those circumstances. Now, hitting him. First of all, he didn't hit him with the gun. That was not the testimony, and there ended up not being any evidence to support that. He hit him with a hammer fist strike using this part of his hand, but he did have the gun in his hand. The FBI agent, Agent May, the training officers at APD all said that under those circumstances, not hitting, the cases I think you're referring to, Judge Elwood, are cases where you go to a vital part of the body. What's the relevant case law? Are we looking at Fourth Amendment gram factor excessive force? Are we looking at qualified immunity case law to assess reasonableness? I thought you're looking at the freestanding case law that emerges out of Nagel, which is asking when we, yes, it has an objective prong, but it is the objectiveness of his belief. Does this matter, or do you think the reasonableness is established under any of those three lines of authority? I think it's established under any of those three, but I think you're correct. I think it is the reasonable belief of the officer. So what's the closest case that are the cases you cited, Watson, Tinella, and Pleasant? Pleasant and Watson are Fourth Amendment cases, as the court knows, but there's good language in those cases talking about this very question as to the reasonableness of an officer using a handgun while he's trying to arrest a suspect. The Watson case was decided by this court, unpublished opinion, three months before this event, where an officer was trying to handcuff a suspect, not knowing whether or not he was still armed, the gun inadvertently discharged and shot him in the back. Summary judgment for qualified immunity was granted on that case, and a panel of this court affirmed it. Pleasant is another civil rights case which involves a gun going off inadvertently while a young man who's committed burglary is trying to scamper over a fence, and the officer is trying to get him, he's got the gun in his hand. So I think you want me to focus in on which standards should you apply. Well, I think both sides agreed to the Nagel standard, so maybe my question's wrong. Follow, I think to be fair to opposition's argument, they're saying you can't look at reasonableness just at the time of the struggle and death, that you've got to go back and look at the four-minute pursuit, especially in light of the MOU, which they say colors sort of the memorandum of understanding, and therefore that unreasonableness, Judge Yackel shouldn't have put the memorandum of understanding aside, right, because he said that's not relevant. But Texas is saying, no, wait a minute, his unreasonableness was commencing the pursuit in the first place all alone. So do you have a response to whether or not the time period that we look at for necessary and proper is just the arrest as charged, or does it somehow go back in time? I think when you're looking at a case like this, you look at the time that he's actually committing the arrest. But I don't believe Judge Yackel said he wasn't going to consider the MOU. I think he said that he didn't consider the APD policies because they weren't binding. They were guidelines. Is he said that those procedures are simply not relevant to the immunity defense? And I think the basis for that is that under 1442, the Clifton case, the Nagel case, Kentucky v. Long, nothing in the MOU limits what a federal officer's rights are under the deputations that Detective Kleiner had. That's his authorization to act. Well, let's say the task force MOU said you will not be a member of this task force or acting under color of the task force if you use a gun, period. Would that restriction have no bearing on whether a subsequent use of a gun was necessary and proper in his federal authority? That's an extreme hypothetical. It's a good question. To be honest with you, I don't know what the answer would be. Fortunately, we don't have that in this case, and the MOU didn't come anywhere close to saying that. What authorization he had was given to him under Title 18 and 21 under the deputations as a special FBI agent task force officer. He had the same authorities that, had it been an FBI agent at that bank, would have had and would have done. And the state of Texas would be in here saying that that FBI agent ought to be indicted for manslaughter because his acts were reckless in the manner and mode in which he was trying to carry out the arrest. And that gets us to the McShane case. A Fifth Circuit, and within the Fifth Circuit, it's a state district court case out of Mississippi, wherein the court held there that you can't supremacy clause amenity protects a federal officer if he has the authority to be doing what he's doing and that you cannot second guess the manner and mode in which he went about doing it. That's the case where the young man, Fifth Circuit, had ordered the University of Mississippi to provide insurance for James Meredith and to the University of Mississippi, and there was protesting. The marshal in that case decided that it would be, things were getting out of hand, and so he used tear gas. The state of, and riot developed and got out of control. Two people got killed. The state of Mississippi indicted that U.S. marshal. And they had affidavits at the hearing on the motion dismissed that his conduct was reckless and therefore not entitled to supremacy clause amenity. The district court there said no. As long as he has a well-founded good faith basis that his belief in doing what he did was proper, then you cannot prosecute them in the state court. So what's the limit? You know, this ties nicely into the, what is the limiting principle that should give people assurance that it won't go too far? If you can't second guess, which is what you're telling us, what's going to stop there from being completely inappropriate but subjectively thought okay behavior? Well, I think one thing you can do is like was found in the Arizona versus Files case, is the court can look at it and make a determination that they weren't doing this to carry out their authorities. They had an ill motive. They had a personal vendetta against his neighbor when he trapped his dog. Or actual criminal intent, I think, could take it out of the round. Or possibly the case that the state wants to raise and say there's evidence of but there's no clear evidence record of the findings that Judge Yackel made should be disturbed. If an officer is bludgeoning a suspect that surrendered with a gun in his hand, that's a much closer call as to whether or not he's entitled to federal protection. Is that a closer call, or with that, do you agree that that would be inappropriate? I think it would depend on whether or not he was acting in self-defense and he was in fear of his life and he did that to keep himself from getting killed. If the suspect is handcuffed on his knees. If the suspect is handcuffed on his knees, I think you're probably there to getting outside the realm of authority. I think that that's hard to try to justify. If you've got a suspect who's not a danger to you, the event is over. I'm just trying to figure out where the line is. Right, where the line is. Is there a line, or do we have federal agents able to act violently? I'm looking at the briefs and trying to figure out if your argument has a logical line to it. Why isn't Nagel, why isn't the United States Supreme Court itself authority for the limits? Nagel said if a prisoner is held in the state court to answer for an act which he was authorized to do by the law of the United States, which he was duty to do as Marshal of the United States, and if in doing that act he did no more than was necessary and proper for him to do, he cannot be guilty of a crime under the law of the state. Necessary and proper, that's the question. That is a limiting principle. We apply it throughout the law. I guess I don't quite understand what the problem is. For over 100 years, there have been a number of cases to try to help define what the court meant by necessary and proper. The other operating principle throughout the removal statutes is that they should not be narrowly construed. They should not be nitpicked or remanded, but they should be read in a way to effectuate the central purpose of the Congress, which is that the federal agents carrying out their duties should be tried in the federal court system. We can argue about some of the facts of this case, but the principles of removal, I thought, were pretty well settled. For only 125 years. I think that's a friendly question. And I said I don't think it requires an answer. I agree with you, but to answer your question. But it is an answer, yes. To answer your statement as well, my question, Judge Elrod, I don't know exactly where the line has to be drawn, but I know this court doesn't have to draw it in this case because of the facts in the case law. Thank you. We have your argument. May it please the Court. I'd like to try to answer some of the issues raised during my principle argument during rebuttal, attempt to address Judge Higginbotham's concerns with regard to the removal. Where I'd point to you in the record is sort of laid out in our opening brief on page 39. And in that part of the brief, we talk about some different points in the record that show that this was not an instance of self-defense. So we have testimony from the defendant himself in this case that Jackson had not threatened him verbally, that there was no risk to him if Jackson escaped, that he wanted to reholster his weapon. His line was, it's not a self-defense situation. And he agreed that nothing Jackson had done justified the use of deadly force. He also resigned his position after the shooting of Jackson. So these are elements in the record that we feel support our argument that this defense. But the ram and use of deadly force, that's not an issue. You didn't charge him, and no one's disputing that it was accidental. This is a recklessness question. We charged him with intentional acts that caused the death. But it wasn't deadly force, intentional deadly force, right? The district court made a finding that this was reckless, accidental. You charged it that way. No one's saying this. Of course the line is clear if the person surrendered. The issue on this side of the line, though, is that he's resisting. He's trying to be arrested, but he's resisting. That's the case we have. In this case, he was resisting in the sense that he was fleeing. I did not see that the district court made any finding about the use of deadly force. And I think the question of whether he used deadly force is a factual one that would also depend on what exactly he did. And so depending on what the district court actually found that he did, that could make a difference. Our argument, of course, to you is that the district court improperly decided material disputes of fact. The district court says on its last page it's uncontroverted that the gunshot was a sympathetic discharge, meaning the gunshot was not an intentional discharge. Do you accept that, or is that a fact that you think is clearly erroneous? Well, whether or not the discharge was intentional is not proved by the evidence. In other words, and the way that the defendant has characterized it, that our experts agree that it was unintentional, that's a mischaracterization because what they said is that the shot is consistent with a sympathetic discharge. In other words, you can't tell from the fact that the gun was fired. But the court found it. That it was sympathetic discharge. Go ahead with you had a bunch of points to cover. Go back to those. Okay. So I wanted to point the Court to our reply brief at page 23 and 24, and that's where we make the most clear statement about this issue about whether the court decided material issues of disputed fact. So the State's opposition stated the State has raised a genuine issue. If the State has raised a genuine issue of material fact bearing on immunity, then the motion to dismiss indictment under Rule 12 should be denied. So then the district court, in its opinion, so that's at record 328. That's our sort of most clear statement of what we felt the standard was under Rule 12. Then at record 1078 is the district court's opinion, and the district court there flatly concludes that the facts are not a material dispute. So the court, by its own terms, has not decided material disputed facts. Do you concede that the case was properly removable? I do not concede that it was removable, Your Honor. You challenged the threshold question, and why so is it not removable? Because you say it was an excessive force? The reason we say it's not removable focuses on the defense raised. The defense would have to allege a federal question. In other words, to be entitled to a federal forum, the defendant would have to say, as a federal officer, I was entitled to do this. Whether it's necessary and proper to carry out his duties as an officer. Correct. And our argument is essentially that he's never— Then why isn't that a basis for removal? Our claim is that despite the fact he said I did what was necessary and proper, he beyond that had to actually aver facts that raised the federal question that he didn't meet that purpose. The removal answers the question of who decides, and you're saying it should have been a state court, not a federal court. And Nagel says that that question should go to the federal court. I frankly do not understand your argument that this case is not removable, other than the fact that if you concede that it's removable, you also have to resolve the questions that you think are in dispute. The reason that we think it's not removable, why should this case just as readily be tried by a state court? If the state's allegation is recklessness and his defense is, well, I wasn't reckless, it was an accident, there is no federal question that is raised by that debate. In other words, he could raise the defense of accident. It's irrelevant to whether or not he had an accident that he be a federal officer. So I see my time has expired. And because the state believes that this prosecution of the defendant does not in any way impede federal law, we respectfully ask that this court reverse the decisions of the district court and remand to state court.